People v Fraser (2025 NY Slip Op 51351(U))

[*1]

People v Fraser

2025 NY Slip Op 51351(U)

Decided on August 28, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 28, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Otis Fraser, Defendant.

Docket No. CR-000079-25BX

For the Defendant:
The Legal Aid Society
(by: Addison Jeske, Esq.)
For the People:
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Erin Cauley)

Deidra R. Moore, J.

On January 1, 2025, Otis Fraser (hereinafter referred to as "Defendant"), was arrested and charged with Vehicle and Traffic Law ("V.T.L.") § 511[2][a][iv], aggravated unlicensed operation of a motor vehicle, and related charges. Defendant was arraigned the next day and released on his own recognizance.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution exercised due diligence and made reasonable inquiries and efforts to disclose all discoverable materials prior to filing the certificate of compliance. Defendant's motion to dismiss pursuant to C.P.L. §§ 245.50[3] and 30.30 is DENIED.
 RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
On January 2, 2025, the Defendant was arraigned on a top charge of V.T.L. § 511[2][a][iv], aggravated unlicensed operation of a motor vehicle in the second degree, an unclassified misdemeanor. The prosecution filed and served a DMV abstract and the complaint was deemed an information. The case was adjourned to February 13, 2025, for discovery compliance.
On February 13, 2025, the People were not discovery compliant. The case was adjourned to March 27, 2025. On March 24, 2025, the prosecution filed and served, off-calendar, a certificate of compliance ("COC") and statement of readiness ("SOR").
On April 3, 2025, the defense notified the prosecution about discovery items they contended were outstanding. The same day, the assigned prosecutor disclosed one of the items, the Arraignment Card, and stated that it was the People's position that two of the requested items, the Defendant's Entity Report and the Central Personnel Indexes for testifying officers, were not discoverable. On April 8, 2025, the People filed and served a supplemental certificate of compliance ("SCOC").
On May 6, 2025, defense counsel notified the assigned prosecutor of another item that remained outstanding, the Vehicle Report. The same day, the People requested the item from the NYPD. The next day, the People received the report from the NYPD and disclosed it to the defense. The People filed and served a second supplemental certificate of compliance ("SCOC2"), dated May 7, 2025.
On May 8, 2025, the parties appeared before this Court for a discovery conference, at which time a motion schedule was set. By motion dated June 6, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], alleging that the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on July 8, 2025. The defense reply followed on July 28, 2025.

LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (C.P.L. § 30.30[1][b], and V.T.L. § 511[2][b]).
The speedy trial clock is statutorily tied to the prosecution's discovery obligations under C.P.L. Article 245 (C.P.L. §§ 245.50[3] and 30.30[5]). Before the People may be deemed ready for trial — thus tolling the speedy trial clock — they must disclose "material and information" in their possession from a non-exhaustive list of twenty-one enumerated categories (C.P.L. § 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]).
After the People have fulfilled their discovery obligations, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquires and efforts to obtain and disclose all material subject to discovery under C.P.L. § 245.20[1] (C.P.L. § 245.50[1]). Absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial" until they have filed a valid certificate of compliance (C.P.L. § 245.50[3]).
A COC's validity turns on whether the People exercised due diligence to comply with their discovery obligations prior to the COC's filing. While the People bear the burden of [*2]establishing that they acted with such diligence, "belated disclosure[s] will not necessarily establish a lack of due diligence or render an initial COC improper" (People v Bay, 41 NY3d 200, 212 [2023]). Analysis of the People's due diligence is "fundamentally case-specific," and "will turn on the circumstances presented" (id.).
As of August 7, 2025, C.P.L. Article 245 provides instruction for courts assessing due diligence in the discovery context.[FN1]
Pursuant to C.P.L. § 245.50[5], courts must analyze the totality of the People's efforts to comply with their obligations under Article 245, rather than assessing the People's efforts "item by item." C.P.L. § 245.50[5][a] articulates those factors to be considered when determining due diligence, instructing courts to consider:
1. the efforts made by the prosecutor to comply with the requirements of Article 245,
2. the volume of discovery provided and the volume of discovery outstanding,
3. the complexity of the case,
4. whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed,
5. the explanation for any alleged discovery lapse,
6. the prosecutor's response when apprised of any allegedly missing discovery,
7. whether the belated discovery was substantively duplicative, insignificant, or easily remedied,
8. whether the omission was corrected,
9. whether the prosecution self-reported the error and took prompt remedial action without court intervention, and
10. whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.

 Finally, C.P.L. § 245.50[5][b] clarifies that "[t]he court's determination shall be based on consideration of all factors listed in paragraph [a] of this subdivision and no one factor shall be determinative."
 DISCUSSION
 I. The Parties' Arguments
A. The Discovery Items in Question
The defense moves to invalidate the COC based on multiple disputed items, some of which Defendant contends were belatedly turned over, and some of which have not yet been disclosed.
First, the defense contends that the prosecution belatedly disclosed the Arraignment Card [*3]and Vehicle Report (C.P.L. § 245.20[1][e]). The defense further alleges that the prosecution has yet to disclose the Defendant's ZOLPA, Pre-Arraignment Notification Report, and Entity Report (C.P.L. § 245.20[1][e], as well as the Central Personal Indexes ("CPIs") for testifying officers (C.P.L. § 245.20[1][k]).
B. The Defendant's Argument
According to the defense, an analysis of the factors set out in C.P.L. § 245.50[5][a] weighs against a finding that the People exercised due diligence. As to the efforts made by the prosecution to comply with their discovery obligations, Defendant notes that the People did not serve discovery until the eighty-first chargeable day — contrary to their obligations to serve discovery within thirty-five days after arraignment (C.P.L. § 245.10[1][a]).[FN2]
Defendant argues that the case is not a complex one, and that the volume of discovery was relatively small, making the belated and outstanding items a significant portion of the total discovery.
The defense avers that the prosecution should have been aware of the outstanding Vehicle Report, Arraignment Card, ZOLPA, and Pre-Arraignment Information Card, as these are documents generated in every case of this type. As to the Entity Report, the defense contends that, contrary to the prosecution's position that this item is not discoverable, the Entity Report is subject to automatic discovery under C.P.L. § 245.20[1][e], and "Defense Counsel regularly receives the Entity Report for both the defendant and the complaining witness from the Bronx County Office of the District Attorney in either redacted or unredacted form" (Defense Motion at 17). Defendant notes that the Vehicle Report includes information "relevant to hearings in this case," particularly the reason for the vehicle stop (Defense Reply at 22). Finally, the defense points out that the prosecution did not "self-report[] the error[s]" and contends that the prosecution's failure to disclose the still outstanding items "continues to impede the Defense's ability to effectively investigate this case and prepare for trial" (id.).
C. The People's Argument
The People argue that they exercised due diligence prior to the COC's filing, first requesting discovery from the 47th Precinct on February 11, 2025. In this request, the assigned prosecutor requested, in addition to specifically listed items, "ANY AND ALL other evidence. . . that was generated or related to this arrest that was not included in the original arrest packet provided to the Bronx District Attorney's Office" (People's Opposition Exhibit 2).
The People argue that Entity Reports are not discoverable because they are similar to a RAP sheet, which the defense would have received at arraignment, and because they are "not within the People's custody or control"; the People further aver that any such reports previously received by defense counsel were "likely disclosed as a courtesy" (People's Opposition at 11). The People note that they turned over a DAS summary, which includes much of the same information as the Entity Report. The People further explain that, because the 47th Precinct sent the assigned prosecutor the DAS summary but no Entity Report, the People "concluded that there was no Entity Report generated in this case" (id.) Finally, the People note that the Defendant has two dockets, and an Entity Report was generated during the second arrest and shared with defense counsel (id. at 12).
The People note that, after defense counsel alerted them about missing discovery items, they requested the Pre-Arraignment Notification Report from the NYPD and were told by the discovery liaison that this document was not added to the Defendant's arrest folder. Moreover, the People note that the information in a Pre-Arraignment Notification Report — such as the charges, time of arrest, and name of the arresting officer — is contained in multiple other items of discovery.
With regard to the ZOLPA, the People affirm that they requested this item from the 47th Precinct discovery liaison, who responded that "she has never heard of that document, and she was not sure what it is" (People's Opposition at 13). After reviewing an example ZOLPA provided by defense counsel, the prosecution advanced the position that the document "is duplicative of multiple items already received by defense, and that it is not related to the subject matter of the case or relevant to any offense charged" (id. at 13).
Finally, the prosecution contends that the Central Personnel Indexes ("CPIs") of the two testifying officers are not discoverable, as they contain no substantiated or unsubstantiated complaints, and thus no potential impeachment information.
II. The Court's Analysis
A. Discoverability of Contested Items
i. ZOLPA
The ZOLPA is a document generated from the NYPD Online Prisoner Arraignment Database, which tracks the progress of a case between arrest and arraignment. The ZOLPA contains the name of the arresting officer and the top arrest charge, information about whether an arrestee was held at central booking or released with a desk appearance ticket, as well as the specific times of events between arrest and arraignment, including the time that the arrest paperwork was generated and the time this paperwork was given to the District Attorney. The ZOLPA may also contain notes from the arresting officer. Consequently, the Court finds that this document is discoverable under C.P.L. § 245.20[1][e] (see People v. JMW, 2024 NY Slip Op 51249(U) [Crim Ct, Kings County] ["Inasmuch as the Prisoner Arraignment Database documents the names of the officers that participated in the defendant's arrest processing, [*4]contains notes entered by these officers about the defendant, and documents information such as how long the defendant was in custody and where he was lodged prior to arraignment, this item is automatically discoverable."]).
ii. Entity Report
The Entity Report is a document generated from the NYPD's Domain Awareness System ("DAS"), a "database that centralizes vital information that would otherwise be kept throughout different isolated data compartments within NYPD computer systems" (People v Robert K, 2024 NYLJ LEXIS 2228, *7-8, [Crim Ct, New York County], internal quotations omitted). Entity Reports present a comprehensive overview of the NYPD's knowledge about a particular person, including "real-time 911 information, past history of call locations, crime complaint reports, arrest reports, summonses, NYPD arrest and warrant history, as well as a person's possible associated vehicles, addresses, persons, phone numbers, date of birth, and firearm licensure history" (id.)
The vast array of information contained within an Entity Report distinguishes this report from a RAP sheet, which contains only the subject's biographical information and past criminal history as a defendant, including past convictions and sentences. Moreover, the People are incorrect in their assertion that the Entity Report is not within the People's possession or control; C.P.L. § 245.20[2] provides that items and information in the custody of any New York state or local police or law enforcement agency shall be deemed to be in the People's possession. Consequently, whenever the NYPD generates this document as part of an arrest, the People must disclose it pursuant to C.P.L. § 245.20[1][e] (People v Robert K, 2024 NYLJ LEXIS 2228, *7-8, [Crim Ct, New York County] ["Insofar as the NYPD generated this report and included it in the defendant's arrest packet, it formed part of the police investigation and, as such, is clearly related to the subject matter of the case."]).
iii. Central Personnel Indexes
This Court agrees with the People that CPIs are not automatically discoverable when they do not contain substantiated or unsubstantiated complaints against a testifying officer. Here, the prosecution notes that the CPI for one officer contains only two exonerated complaints, while the other officer's CPI contains no complaints. Numerous courts have held that exonerated and unfounded complaints are not discoverable as potential impeachment material (see e.g. People v Barralaga, 153 NYS3d 808 [Crim Ct, New York County 2021]; People v Montgomery, 159 NYS3d 655 [Sup Ct, New York County 2022]; People v Randolph, 132 NYS3d 726 [Sup Ct, Suffolk County 2020]). Consequently, the People have fulfilled their discovery obligations with respect to the Central Personnel Indexes.
B. Due Diligence Under Article 245.50[5]
The People here have established that they acted with due diligence and made reasonable inquiries to comply with their discovery obligations prior to the filing of the March 24, 2025, certificate of compliance. Though the case is not a complex one involving voluminous [*5]discovery, the belated and outstanding discoverable items comprise a handful of documents of limited substantive value. Perhaps the most substantive disputed item is the Vehicle Report, which contains a field labeled "basis for stop." This field, however, contains only the words "VTL infraction" and "VTL - Unlicensed Operator", with no additional substantive information.
Additionally, the People responded promptly to obtain and disclose outstanding discovery flagged by defense counsel. The People disclosed the Arraignment Card on April 3, 2025, "within 25 minutes" of being notified of its absence (People's Opposition at 10). The People disclosed the Vehicle Report on May 7, 2025, the day after notification from defense counsel that the item was missing. Finally, the People further inquired about the Pre-Arraignment Notification Card and were informed by the NYPD discovery liaison that this item was not added to Defendant's arrest packet.
It is unclear if an Entity Report was generated in connection with Defendant's arrest in the instant matter; if so, this item is subject to automatic discovery. However, to the extent that defense counsel is in possession of Defendant's Entity Report from a subsequent arrest, any information contained in the potential Entity Report at issue here would be duplicative of material already in the Defendant's possession.
Finally, the Court orders the prosecution to make further inquiry with regard to the ZOLPA in order to ascertain whether this document was generated. Though the 47th Precinct's discovery liaison expressed unfamiliarity with the document, defense counsel provided the assigned prosecutor with an example copy, and the People did not make further effort to obtain the document, which may contain notes from the arresting officer.

THE CPL § 30.30 CALCULATION
The criminal action commenced with the filing of the accusatory instrument; however, the first day counted for speedy trial purposes is the day after the commencement of the criminal action, January 3, 2025 (People v Morrison, 231 NYS 3d 922 [Crim Ct, Bronx County 2025]). The prosecution filed and served the COC on March 24, 2025. As discussed supra, the COC was valid and tolled the speedy trial clock. No chargeable adjournments followed the filing of the certificate of compliance (January 3, 2025 — March 24, 2025 = 81 days charged).
Eighty-one [81] days are chargeable to the People.
The People are ordered to further inquire into the existence of the ZOLPA and, if found, disclose this document to the defense promptly. The People should make this inquiry within fifteen [15] business days.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is DENIED.
This constitutes the opinion, decision, and the order of the Court.
Dated: August 28, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:2025 NY Sess. Laws Ch. 56 (S. 3006-C), Part LL § 8, enacted May 7, 2025: "This act shall take effect on the ninetieth day after it shall have become a law and shall apply to all criminal actions pending on such date and all actions commenced on or after such date."

Footnote 2:"When the defendant is not in custody during the pendency of the criminal case, the prosecution shall perform its initial discovery obligations within thirty-five calendar days after the defendant's arraignment on an indictment, superior court information, prosecutor's information, information, simplified information, misdemeanor complaint or felony complaint" (C.P.L. § 245.10[1][a][ii]). However, when discoverable materials "are exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution, the time period [for disclosure] may be stayed by up to an additional thirty calendar days without need for a motion" under C.P.L. § 245.70[2] (C.P.L. § 245.10[1][a]).